UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

CONSTANCE BARTON                                    CIVIL ACTION

VERSUS                                              NO. 11-186

CHECKERS DRIVE-IN                                   SECTION "D"(5)
RESTAURANTS, INC.

ORDER AND REASONS

Before the court is the "Motion for Partial Dismissal of Plaintiff's Complaint" (Doc. No. 7) filed by the defendant Checkers Drive-In Restaurants, Inc./Rally's Hamburgers ("Checkers"). Plaintiff, Constance Barton ("Ms. Barton"), filed a memorandum in opposition and alternatively requested leave to amend (Doc. No. 8).  Defendant replied (Doc. No. 11) to plaintiff's memorandum in opposition.  The motion, set for hearing on Wednesday, March 23, 2011, is before the court on briefs, without oral argument.  Now, having considered the memoranda of counsel, the record and the applicable law, the court rules as set forth specifically below.

I. BACKGROUND

In this suit, Ms. Barton, allegedly a former employee of the defendant Checkers filed suit against it, alleging that defendant (1) refused to allow her to return to work after taking FMLA leave, (2) wrongfully constructively discharged her on the basis of a perceived disability (Complaint at ¶¶ 7-11), (3) engaged in discrimination and harassment on the basis of a perceived disability in clear violation of Louisiana's Employment Discrimination Law (L.R.S. 23:301 *et seq*.), (4) retaliated against plaintiff for exercising her rights under both the Family and Medical Leave Act (FMLA) and the Louisiana Worker's Compensation laws in violation of La. R.S. 23:1361 (*Id.* at  ¶¶ 25-27), (5) negligently and intentionally inflicted of emotional distress (*Id.* at

1

¶¶ 21 and 22), and (6) invaded her privacy (*Id.* at ¶ 23). Plaintiff further alleges that the actions of her employer caused her to suffer emotional injuries, psychological damage, mental anguish and economic loss (medical expenses and loss of wages). *See* Plaintiff's Complaint (Rec. Doc. 1-1). Additionally, Plaintiff specifically reserved the right to amend her complaint to include additional potential counts under the Americans with Disabilities Act of 1990 ("ADA"), following the exhaustion of her administrative remedies. *Id.*

Plaintiff's factual allegations can hardly be characterized as threadbare but are obviously deficient with respect to certain claims. Barton alleges that:

(1) in 1999, she began working at Checkers and progressed to the level of assistant manager of Checkers' Gretna location, which is where all of the acts complained of occurred (Petition at ¶ 2);

(2) in September 2009 and in accordance with the FMLA and Defendant's own policies, she informed defendant that she needed to take FMLA compliant leave to have surgery to correct a work-related injury for which she was receiving worker's compensation benefits (Petition at ¶¶ 3 and 4);

(3) immediately thereafter plaintiff's supervisor, John Short, commenced a campaign seeking to interfere with her leave and retaliate against her for asserting her rights *contra* a corporate "return to work program and light duty," program which were available in theory only (Petition at ¶¶ 5 and 6);

(4) near the expiration of her FMLA and in response to plaintiff's January 4, 2010 request accompanied by her doctor's note listing restrictions atypical of her daily duties as assistant manager, Mr. Short informed plaintiff that she must be "100% to return to work" (Petition at ¶ 7);

(5) again, in response to her January 19, 2010 email stating that she was prepared to return to work, she was rebuffed by his reply stating that she must have a doctor's note stating that her only restriction was an inability to lift 50 pounds, failing which, her only recourse was worker's compensation (Petition at ¶ 8); and

(6) thereafter, Checker's worker's compensation personnel informed plaintiff that, without the cooperation of her supervisor, nothing else could be done (Petition at ¶ 9).

It appears on the face of the complaint that plaintiff complied with the written notice requirement of La. Rev. Stat. 23:303© (Complaint at ¶¶ 29-31).

On January 27, 2011, Checkers removed this action from the Twenty-Fourth Judicial District Court for the Parish of Jefferson and then filed the subject Rule 12(b)(6) motion, seeking dismissal of plaintiff's state law disability discrimination and harassment claims, negligent/intentional infliction of emotional distress claims and invasion of privacy claim. Additionally, defendant seeks an order dismissing plaintiff's claims for compensatory damages, back pay, benefits and reinstatement for retaliation under Louisiana's Worker's Compensation law, considering that La. Rev. Stat. §23:1361 ( C) limits plaintiff's damages to a civil penalty of no more than one year's earnings, as well as reasonable attorney's fees and costs.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face."[1]  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."[2]  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.[3]  But the Court is not bound to accept as true legal conclusions couched as factual allegations.[4]

---

[1] *Ashcroft v. Iqbal*, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

[2] *Iqbal*, 129 S.Ct. at 1949.

[3] *Lormand v. U.S. Unwired, Inc*., 565 F.3d 228, 232-33 (5th Cir.2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996).

[4] *Iqbal*, 129 S.Ct. at 1949-50.

A legally sufficient complaint must establish more than a "sheer possibility" that plaintiff's claim is true.[5]  It need not contain detailed factual allegations, but it must go beyond labels, legal conclusions, or formulaic recitations of the elements of a cause of action.[6]  In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim.[7]  If there are insufficient factual allegations to raise a right to relief above the speculative level[8] or if it is apparent from the face of the complaint that there is an insuperable bar to relief,[9] the claim must be dismissed.

When requested, leave to amend a complaint should be freely given when justice so requires.[10]  Plaintiff has done so in the alternative.

### III.  ANALYSIS

### A. Disability Discrimination

In her complaint, Barton alleges that Checkers discriminated against her on the basis of a perceived disability in violation Louisiana's Employment Discrimination Act (La. Rev. Stat. § 23:323), which governs disability discrimination.  LSA-R.S. 23:323 states that no otherwise qualified disabled person shall, on the basis of a disability, be subjected to discrimination in employment.  Employers, etc., are not permitted to engage in certain practices with regard to

---

[5] *Id.*

[6]*Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

[7]*Lormand*, 565 F.3d at 255-57.

[8] *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955.

[9]*Jones v. Bock,* 549 U.S. 199, 215, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007); *Carbe v. Lappin*, 492 F.3d 325, 328 & n. 9 (5th Cir.2007).

[10]Federal Rule of Civil Procedure 15.

"otherwise qualified disabled person[s]," including failure or refusal to hire, promote, or reasonably accommodate an otherwise qualified disabled person "on the basis of a disability, when it is unrelated to the individual's ability, with reasonable accommodation, to perform the duties of a particular job or position."  An "otherwise qualified disabled person" means a disabled person who, with reasonable accommodation, can perform the essential functions of the employment position that such person holds or desires.  Under LSA-R.S. 23:322, "disabled person" means any person who has a physical or mental impairment which substantially limits one or more of the major life activities, or has a record of such an impairment, *or is regarded as having such an impairment*.[11]

Because Louisiana's statute is based on the ADA, the result of the court's analysis under either statute must, necessarily, be the same.[12]  In order to demonstrate a *prima facie* case of employment discrimination under either the ADA or Louisiana law, the plaintiff must prove that (1) she has a "disability" or is "regarded as disabled";[13] (2) she is "qualified" for her position; (3)

---

[11]*See Varner v. Blessey Enterprises, Inc*., 942 So.2d 1147, 1150-51 (La. App. 5th Cir. 2006).

[12]*Mincey v. Dow Chem. Co.*, 217, F.Supp.2d 737, 742 (M. D. La.2002);  *Crocker v. City of Kenner*, 2002 U.S. Dist. LEXIS 17928, at * 14-15 (E. D. La. Sept. 23.2002) ( "Because Louisiana's anti-discrimination laws are similar in scope to the federal prohibitions against disability discrimination, state and federal courts in Louisiana routinely look to the federal courts' interpretations of the ADA ... for persuasive guidance in analyzing state law discrimination claims.").

[13]"Regarded as" disabled simply means "that the employer regards the employee as having a substantial limitation on [her] ability to work in general."  *Chandler v. City of Dallas,* 2 F.3d 1385, 1391-93 (5th Cir. 1993); *see also Conine ex rel. Estate of Addie v.Universal Oil Products Co.,* 966 So.2d 763, 767 (La. App. 2nd Cir.), *writ denied*, 977 So.2d 729 (La. 2008).

she suffered an adverse employment action[14] because of her disability or the perception of her disability; and (4) she was replaced by or treated less favorably than non-disabled employees.[15] The plaintiff need only allege sufficient facts that, if true, would establish a claim for disability discrimination in order to withstand a motion to dismiss.[16]   In the context of employment discrimination, the Supreme Court has clarified that pleadings need not contain specific facts establishing a *prima facie* case of discrimination under the *McDonnell Douglas[17]* framework.[18]

Barton alleges that she was perceived as being disabled by her supervisor at Checkers and that she was constructively discharged because of said perception.  Indeed, she alleges that she was not allowed to return to work in any capacity unless she could verify with evidence of a doctors note that she was in perfect physical condition - *i.e.*, "100%" meaning no restrictions at all.  Barton asserts that she is a qualified individual because she can, with reasonable accommodation, perform the essential functions of her job as assistant manager. *Id.* Nevertheless, her supervisor/Checkers perceived her as being "disabled" because she was not

---

[14] In the employment context, the Supreme Court has held that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe Rv. v. White*, --- U.S. ----, 126 S.Ct. 2405, 2415 (2006). An action is usually found materially adverse if it is an ultimate employment action (directly affecting the employee's status) or otherwise meets some level of "substantiality." *Webb v. Cardiothoracic Surgery Assoc.*, 139 F.3d 532, 540 (5th Cir.1998).

[15]*See e.g., EEOC v. Chevron Phillips Chemical Co., LP,* 570 F.3d 606, 615 (5th Cir. 2009); *Turco v. Hoechst Celanese Corporation*, 101 F.3d 1090, 1092 (5th Cir.2008); *Gowesky v. Singing River Hosp. Systems,* 321 F.3d 503, 511 (5th Cir. 2003).

[16]*Twombly*, 550 U.S. at 555.

[17]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed. 2d 668 (1973).

[18]*Twombly,* 550 U.S. at 569-70.

"100%" healed and constructively discharged her by refusing to allow her to return to work absent medical proof of no restrictions.[19]

Plaintiff can state a hostile work environment claim in two ways: by showing that a single, egregious incident altered the terms and conditions of her employment; or by showing several harassing incidents that are not severe, but are still pervasive enough to create a hostile work environment.[20]  Plaintiff has specifically alleged two incidents involving written requests addressed to her by her Checker's supervisor, Mr. Short.

It further appears to the court that the plaintiff's claim under La. R.S. 23:332 is subsumed in her FMLA claim.[21]  Defendant has not leveled its aim at plaintiff's FMLA claim.[22]  Under the circumstances, the Court finds no need to further explore the parameters of La. R. S. 23:332 at this nascent stage of the proceedings.  Plaintiff has sufficiently stated a claim under Louisiana's Employment Discrimination Law for purposes of Rule 12(b)(6).  The same cannot be said for the

---

[19]"100% healed" policies are *per se* violations of the ADA because the "100% healed" or "fully healed" policy discriminates against qualified individuals with disabilities and permits employers to substitute a determination of whether a qualified individual is "100% healed" from their injury for the required individual assessment whether the qualified individual is able to perform the essential functions of his or her job either with or without accommodation.  *See McGregor v. Nat'l R.R. Passenger Corp.*, 187 F.3d 1113, 1116 (9th Cir.1999).

[20]*Lauderdale v. Texas Dept. of Crim. Justice*, 512 F.3d 157, 163 (5th Cir. 2007).

[21]To establish a *prima facie* case of discrimination or retaliation under the FMLA, plaintiff need only show that (1) she is protected under the FMLA, (2) she suffered an adverse employment decision, and (3) either (a) she was treated less favorably than an employee who had not requested FMLA leave or (b) the adverse decision was made because of the plaintiff's FMLA leave request.  *See Hunt v. Rapides Healthcare System,* 277 F.3d 757, 768 (5th Cir. 2002); *Bocalbos v. Nat'l W. Life Ins. Co.,* 162 F.3d 379, 383 (5th Cir. 1998).

[22]*See* Defendant's Rule 12 (b)(6) Motion for Partial Dismissal at p. 1 (listing claims of (1) disability discrimination, harassment and retaliation under state law, (2) negligent infliction of emotional distress, (3) intentional infliction of emotional distress, (4) invasion of privacy and (5) limiting plaintiff's damages consistent with La. Rev. Stat. 23:1361) (Doc. 7).

plaintiff's remaining state law claims discussed below.

### B.  State Law Claims of Negligent and Intentional Infliction of Emotional Distress and Invasion of Privacy

Defendant moves for dismissal of Plaintiff's state law tort claims of  negligent infliction of emotional distress, intentional infliction of emotional distress and invasion of privacy.  To the extent that these claims are separate from plaintiff's FMLA, retaliation and "*regarded as disabled*"/hostile work environment and discrimination claims, neither plaintiff's complaint nor her memorandum in opposition distinguishes them.  Indeed, plaintiff complaint merely states:

> 21.  All or some of the Defendant's actions as set forth above constitute a violation of law including negligent infliction of emotional distress.
>
> 22. All or some of the Defendant's actions as set forth above constitute a violation of law including intentional infliction of emotional distress.
>
> 23. All or some of the Defendant's actions as set forth above constitute a violation of law including invasion of privacy of the petitioner.[23]

There appears to be no dispute that claims for *negligent* infliction of emotional harm are barred under Louisiana Worker's Compensation law.[24]   Additionally and as aforestated, plaintiff's remaining claims (IIED and Invasion of Privacy) are indistinguishable on the face of the plaintiff's complaint.

Defendant argues that was alleged in plaintiff's complaint is neither "extreme" or

---

[23]Complaint at ¶¶ 21, 22, 23 (Doc. No. 1).

[24]*See Booth v. Intertrans Corp.,* 1995 WL 324631 * 18 (E. D. La. 1995) (Vance, J.) (dismissing plaintiff's negligent infliction of emotional distress claim because Louisiana Workmen's Compensation Statute provides the exclusive remedy for injuries sustained by the plaintiff as a result of the defendant's negligence).

"outrageous." The court agrees that the defendant is forced to read between the lines or refer to plaintiff's memorandum in opposition to get the gist plaintiff's claims, which are otherwise conclusory on the face of the complaint.  Plaintiff refers to only two incidents in her complaint and those involve her supervisor's requests to return to work notes from her physician.[25]   The court is convinced that plaintiff's pleadings regarding IIED are insufficient as a matter of law. More particularly, Plaintiff's claim fails to meet the standard required by Fed. R. Civ. P. 8(a) providing enough facts to show that she is entitled to relief under La. Civ. C. Article 2315 for intentional infliction of emotional distress.[26]

As to the tort of "invasion of privacy," defendant is left to wonder how the facts alleged as the bases of plaintiffs' workplace discrimination and retaliation claims, *inter alia*, also constitute the tort of "invasion of privacy" under Louisiana law.  An invasion of privacy may occur in one of four ways: (1) one appropriates name or likeness of another for ones own benefit; (2) one unreasonably intrudes upon physical solitude or seclusion of another; (3) one gives publicity which unreasonably places another in a false light before the public; and, (4) one unreasonably discloses embarrassing private facts about another to the public.[27]   An actionable

---

[25]To succeed on her IIED claim, Barton must show: (1) that the alleged conduct was extreme and outrageous; (2) that the alleged emotional distress suffered by her was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *White v. Monsanto*, 585 So.2d 1205, 1209 (La.1991).

[26]*See Simoneaux v. New York Life Ins. Co.,* 2001 WL 667738 * (M. D. La. 2001) (finding defendant's motion to dismiss IIED claim proper and explaining that, even assuming that the allegations in the Petition did constitute "outrageous conduct beyond all bounds of decency," plaintiff still failed to state a claim absent allegations that the defendant intentionally caused plaintiff extreme mental suffering or anguish).

[27]*Jaubert v. Crowley Post-Singal, Inc*., 375 So.2d 1386 (La.1979).

9

invasion of privacy occurs only when the defendant's conduct is unreasonable and seriously interferes with the plaintiff's privacy interest.[28] Here, Barton does not even indicate which of the four interests the defendant has allegedly invaded.

In summary and for reasons previously stated: (1) Plaintiff's claim of negligent infliction of emotional distress is not actionable; and (2) Plaintiff's claims of intentional infliction of emotional distress and invasion of privacy are only conclusory and thus not sufficient to withstand the instant Fed. R. Civ. P 12(b)(6) motion.

### D.  La. Rev. Stat. 23:1361

Finally, Plaintiff does not dispute that her recovery for retaliation under Louisiana's worker's compensation law is governed by La. Rev. Stat. §23:1361( C ), which limits her recovery to no more than one year's earnings, as well as reasonable attorney's fees and costs.

### E.  Leave to Amend

In the interest of judicial economy and because plaintiff must amend her suit to add her ADA claims once she has exhausted her administrative remedies, Barton seeks leave to amend to add same, *to restate her request for relief under L.R.S. §23:1361( C )*, such that it comports with Louisiana law, and, in the alternative, to sufficiently plead her entitlement to relief under Louisiana law, in the event that this court find that the defendant's motion to dismiss has merit in any one or more of its particulars.

Federal Rules of Civil Procedure Rule 15(a)(2) allows a party to amend its pleading, if more than 21 days have passed after service of a motion under Rule 12(b), with the opposing

---

[28]*Id.* at 1389 (*citing* Comment, The Right of Privacy in Louisiana, 28 La.L.Rev. 469 (1968)).

party's written consent or with leave of court. Rule 15(a)(2) instructs "[t]he court should freely give leave when justice so requires."

Plaintiff has requested leave to amend and there has been no undue delay, bad faith, or dilatory motive on her part.  Barton has not filed any previous amendments, much less an unsuccessful one.  No undue prejudice will be imposed on defendant by allowing plaintiff to amend her complaint at this early stage of the proceedings.  Moreover, it cannot be said on this record that any amendment will be futile. Therefore, justice requires granting leave to amend plaintiff's complaint.[29]  Accordingly,

**IT IS ORDERED** that:

(1) Defendant's Motion for Partial Dismissal (Doc. 7) is GRANTED IN PART, that is only as to plaintiff's claim for negligent infliction of emotional distress and limiting plaintiff's recovery of damages for retaliation under Louisiana's worker's compensation law (La. Rev. Stat. §23:1361( C )) which provides that her recovery should be no more than one year's earnings, as well as reasonable attorney's fees and costs; and

(2) In all other respects, Defendant's Motion for Partial Dismissal (Doc. 7) is DENIED IN PART without prejudice and fully reserving the defendant's right to reurge its motion as to any amended pleading should circumstances warrant.

**IT IS FURTHER ORDERED** that plaintiff's request for leave to amend is GRANTED in that, **within thirty (30) days of the date of entry of this order**, plaintiff shall file her amended complaint as discussed herein above, failing which plaintiff's claims for intentional infliction of emotional distress and invasion of privacy will be dismissed with prejudice *nunc pro*

---

[29]*See Foman v. Davis*, 371 U.S. 178 (1962).

11

*tunc.*[30]

New Orleans, Louisiana, this <u>27th</u> day of March, 2011.

A. J. McNAMARA
UNITED STATES DISTRICT JUDGE

---

[30]Nothing in this order should be construed as preventing either party from filing a Motion for Summary Judgment after there has been adequate time for discovery, if there is no genuine issue of material fact and mover is entitled to judgment as a matter of law.